Steele v. Perry's Restaurant, L.L. Steele v. Leasing Enterprises Limited, and Mr. Patel, when you're ready, we'll hear from you. Good morning. May it please the Court, my name is Sridhar Patel and I represent appellants, cross appellees, Julian Steele and some 230 plus other hardworking current and former servers of Perry's Restaurants. This appeal centers on a subject that few outside of counsel's table likely care about, attorney's fees. This is the second such appeal before a panel in the Fifth Circuit regarding this issue in this case. It's important to remember the legislative intent behind the FLSA's attorney's fee provision, and that is to recompense wronged employees for the expenses incurred in redressing violations of the FLSA and obtaining wrongly withheld back pay. I would like to start this morning and focus on three key questions. First, did the District Court abuse its discretion in determining an attorney's fee amount without first calculating a load star? The answer to that question should be a resounding yes. The second question is, did the District Court abuse its discretion in the application of the factors in, the Johnson factors in Johnson versus Georgia Highway Express? And the answer to that question is also a resounding yes. The third question is, did the District Court commit clear error in the findings it made on those Johnson factors? And the answer to that third question should also be a resounding yes. Generally, when challenging a court's discretion in awarding attorney's fees, the challenger faces a very uphill battle and likely loses. But this case is different, and the appellant's hearing should win, and here's why. First, the law of this circuit is well settled on calculating attorney's fees. District courts are to calculate a load star. The District Court calculates this load star by determining a reasonable number of hours and multiplying that by a reasonable attorney's fee rate. Well, let me ask you, did not the plaintiffs provide a load star calculation to support their fee claim? Your Honor, we did provide a proposed load star. However, the District Court did not suggest in the record, in the transcript or otherwise, that that was the proposed amount that it was starting from. Well, that District Judge has actually been on the, in the federal courts longer than any of us here on, well, almost any, two of us here on the bench. So you think he doesn't know anything about the requirement of the load star followed by the Johnson v. Georgia Highways? I believe the District Court probably does have that knowledge. The District Court's been on the bench longer than I've probably been alive, Your Honor. But that doesn't change the fact that if I wanted to challenge the load star and have this appellate panel review it for clear error, I have no information to do that. There is no analysis as to where reductions were made for excessive billing. Ordinarily in cases such as this, perhaps a District Court evaluates how much time was spent on a motion for summary judgment and says, you know, 100 hours on this motion for a limited number of exhibits is probably too much and they reduce the same. Here, the District Court didn't do that. Instead, the District Court jumped directly into the application of the Johnson factors. And so the second point is the District Court is generally required to take this load star, which is precalculated, predetermined, again, a byproduct of the reasonable number of hours expended, which requires some analysis from the District Court multiplied by a reasonable hourly rate. The District Court takes that sum and applies the 12 non-exclusive Johnson factors and either determines whether to increase or reduce said attorney's fee amount. Let me just ask you a question. Am I correct that the judgment in the case was approximately $1.5 million? Yes, Your Honor. Okay, so divided by 230 plaintiffs, that's about $6,500 per plaintiff. I'll trust your math on that, Your Honor. Well, I mean, that's just the ballpark. And you litigated for seven years and, of course, I was on the first panel where the judge had rejected most of the claims that the plaintiffs presented and then our panel rejected the willfulness and bad faith damages. I understand. And the judge knew all that because he obviously knew. I mean, the colloquy between counsel and the court seems to me to be fairly friendly. It is, Your Honor, and we have the utmost respect. Until the last paragraph or two. Your Honor, we have the utmost respect for the District Court. And to your point of the rejection of the willfulness and good faith arguments by our side, those arguments, those are not separate claims. They're not so tangentially related to where fees can be segregated out. In fact, I would analogize the willfulness and good faith claims. Oh, I'm sorry. I apologize, Your Honor. I would analogize the willfulness and good faith claims to aggregating factors or mitigating factors. Under the FLSA, if there's a violation, liquidated damages are automatic unless the defendant, the employer, proves that it had a good faith belief that it wasn't violating the FLSA. Secondarily, if there's a finding of willfulness instead of a two-year statute of limitations, you get a third year. Those aren't separate claims. When you litigate these FLSA actions, all of those components are sort of on the train at the same time. No, I might, I might, I might, that might be reasonable as a general principle, but I'm pretty familiar with what happened in this case. And this case was based on a somewhat novel claim about deduction of carrying costs when Perrys cashed out the tips to the servers before they had cash in hand. And it raised some real interesting claims. And the main, I mean, you can correct me if I'm wrong, but the main, their main defense to the willfulness and the good faith claim was that one of them, they had talked to a Department of Labor person a few years earlier, and the Department of Labor person said, eh, your procedures are okay. And also it was a fairly novel claim. So why are they, why is that intertwined with the merits of carrying costs vis-à-vis the $2.13 an hour vis-à-vis, you know, one case out of the Sixth Circuit and so on? Well, Your Honor, they're intertwined because the violation, and the prior panel also had to undertake this analysis to see whether this charge back was a violation of the FLSA. It's all interrelated because at the time the policy was implemented, appellees purportedly discussed the issue with a Department of Labor auditor. Now, at the trial court in the first case, there was no evidence to refute that. There was also no evidence to suggest exactly what was said or otherwise. So it is intertwined in that when the policy was implemented, if Perry's was operating under a false assumption that some Department of Labor individual had given them the green light, so to speak, to charge back their employees for credit card conversion fees, then it's intertwined in whether they, what their intent was when they started the practice. And the practice itself was a violation of the FLSA. So in order to litigate this issue, you have to first figure out whether it's a violation of the FLSA. Secondarily, figure out when the policy was implemented. And thirdly, figure out whether they had a good faith belief or not. And that is their burden, and unfortunately for our side, they proved that at the trial court. What was the hourly rate that's being used in the computations, in your computations, in your requests? There are varied hourly rates. I think the highest one was $500. There was a rate of $470. Now, appellees do not challenge— What was the lowest? I believe $75 for an administrative assistant or a paralegal. For lawyers? For lawyers, I think around the ballpark of $225. I'm sorry? $225. And now, so going back to the fee issue and the reasonable rates, appellees do not contest or dispute that the leading two attorneys, Messrs. Steele and Sturm, their hourly rates were unreasonable. Instead, they challenged the hourly rates of everyone that falls below them, myself included. And there is no analysis from the district court as to whether my hourly rate was ever accepted or not and if it was reduced or what the reduction would have been and what would have been reasonable. Now, we did submit evidence to support our contention that all of our rates were reasonable for— How long were you in trial? The trial was two days. I'm sorry? Two days, Your Honor. Two days? Yes, sir. And I'm as attorney's fee as you want for this two-day trial? Well, it's not— I understand. You've got all the discovery. So in the case of two days to trial, what's the total fee you're seeking? I don't have the number off the top of my head, Your Honor. It's over—it's close to $750,000, but that includes $90,000 for the appeal. Yes, Your Honor. It's $750,000 of the amount we're covering. Right. So for the proceedings in the trial court, I believe the number was somewhere in the ballpark of $625,000. Yeah, but there were add-ons. Yes, Your Honor. There was about $55,000 in supplemental fees between—and so the reason that— Let me understand. On this issue, your complaint is that the record lacks any analysis of how it is that the district court arrived at the $200,000 figure. Is that the complaint or am I oversimplifying it? That's probably an oversimplification. Our complaint is threefold. First, the court didn't calculate a load star. There's nothing in the record that says we're going to give you a term's fee. What's the next one? The second one is the application of the Johnson factors. So in applying the Johnson factors— The court applied the Johnson factors. Yes, Your Honor. The court did recite— That is correct. That is our contention. And the third complaint is? The findings of fact on those particular factors were clearly erroneous. And the first one is the novelty issue. As Judge Jones so eloquently pointed out, this was a novel question of law. It was a novel question of law until the Fifth Circuit panel came back and said, no, in fact, this charge back is a violation of the FLSA. In the district court's analysis, the district court doesn't give any credence to the novelty of it. It says it's just a calculation issue. Well, if I recall correctly, his original opinion finding a violation was rather short. It was, Your Honor. It took us a long time to explain it, but his opinion was short. So I'm not sure whether he thought it was so novel. I understood, Your Honor. And the district court's opinions and orders are often very succinct, which we appreciate in some instances. Secondarily, the results obtained factor, going back to the Johnson factors and the application of the same, wasn't given the proper weight. Now, the Supreme Court and the Fifth Circuit have come out and said that the results obtained factor is the most crucial. And here, the district court, while finding it to be a positive value, doesn't explain whether there is an increase or decrease. Well, there wouldn't be a decrease, but if there's an increase in the requested load star, because quite frankly, I don't know if there's a load star calculation. But then it didn't explain this. That's part of it. I don't think it was correctly applied, because if the results obtained are $1.5 million for steakhouse servers, then the results are good. And the district court said the same. These are good results. And the jurisprudence suggests that if you've got a good result, then the attorney's fee should not be reduced, maybe a little bit, but not so significantly, not by 67 to 70 percent over the course of this litigation. Thirdly, the district court, in our opinion, or from our perspective— What do you want us to do, send it back to the district court and tell him what? He wants a new judge. I understand. Your Honor, the request is one of three options. The first option is the appellate court renders an attorney's fee amount, which would probably be the most challenging. Secondarily, remand to a district court— Well, this district judge knows about this case, and he knows more about this case and has a feel of it than any other district judge is going to be able to acquire. And I agree with that. But I think in this particular instance, given the nature of the case and the longevity, perhaps— Well, what's the basis for you saying you want some other judge other than to be ruled against you and cut your fees? That doesn't necessarily mean bias. Well, I don't know if there's any expressed bias, but when the court came to its conclusion that $200,000 for five to six years of litigating in a federal court in Houston was the fee amount, the court stated—and perhaps some of it was in jest— but the court stated, I'm not going to attempt counting, but I can make it odd-numbered if you think it has more resemblance to it. I'm not going to—I didn't hear you. Oh, I'm sorry. Just keep your voice up. I apologize, Your Honor. I'm not going to attempt counting, but I can make it odd— I'm not going to attempt— Counting. Counting? Counting. But I can make it odd-numbered if you think it has more resemblance to it, which means truth or reality. So that's one reason we think that perhaps a different judge, notwithstanding this particular court's history with the case, could objectively look at this fee request and see, hey, maybe this motion for summary judgment did take too long. Maybe there should be a 5% reduction for block billing or something. And then the next point— You have—we'll let you reserve that point for your rebuttal. Thank you, Your Honor. Appreciate it. Thank you. Mr. Schouler. May it please the Court, I'm Lionel Schouler, counsel for Leasing Enterprises Limited, now known as Perry's Restaurants. Formula should not triumph over the substance of this case. The cornerstone of an attorney's fee application should be the reasonableness of the time spent and the reasonableness of the rate. As Judge Higginbotham pointed out in Moda v. UT Health Science Center back in 2001, it's not for the plaintiff to succeed by complaining about the objections of the defendant in the fee application process, but rather to demonstrate independently that the fees are reasonable. We take the position in this case, as the Court will see from our briefing, that there was no attempt at all to distinguish between reasonable and unreasonable time entries. And this Court's decision in the Cezanne case, S-A-I-Z-A-N, from 2006, which I believe Judge Higginbotham was on the panel, indicated that the plaintiffs have the burden to show billing judgment, including hours written off, as unproductive. That is why I have submitted to the Court today two demonstratives. Demonstrative A is an excerpt from our brief that deals with the caliber of the documentation that was submitted by the plaintiffs to support their application. We have on Demonstrative A, which is taken from our brief and the record site is there, several entries, a sample of several entries where all that appeared were question marks. When we challenged these entries, the plaintiffs responded by submitting an affidavit from a paralegal or a law clerk indicating, I went through the invoices, and if I was uncertain about the entry, I wrote a question mark along the left-hand margin of the page. This is someone who works for the plaintiffs who couldn't make sense of what the time entries were about. And as our documentation and the record demonstrate, there were over 290 of these entries. The challenge entries, as are shown in Demonstrative B, total $575,000, ranging from work done on other cases, work that was administrative, work that was not adequately described, work that was undertaken to reeducate a parade of associates who came through on this case from 2009 to 2015, and finally, work on failed claims. And that shows what the offsets should be all about. There was a concession by the plaintiffs at the hearing that Judge Hughes conducted in November 2016 that they will acknowledge that they shouldn't get paid for work they did on their retaliation claim that they filed in regard to the named plaintiff. But that's about the only concession they made. One factor that they cited to demonstrate to the court the reasonableness of the fee was that the district court record had over 500 entries, two of which Judge Hughes immediately responded, well, that's my problem here. The quantity and quality of many of those pleadings were useless to me. So they can't just give a superficial presentation and expect that to satisfy the requirement. As Judge Jones is probably aware from her knowledge of the first case, this case, there were only three depositions taken, two of which pertain specifically to the retaliation claim, one by us, one by them. The third deposition was a 35-minute deposition permitted by Judge Hughes of our corporate representative. There were no other depositions taken. The plaintiffs called no witnesses at the trial. They submitted fewer than five exhibits. One exhibit they attempted to submit was a letter from the Department of Labor many years after the fact, was now saying he didn't recall having any such conversation, but he doubts he would have said anything about that. And Judge Hughes immediately said, what does somebody surmise about this years after the fact do? It's double hearsay as well. It presents no evidence. And he rejected that evidence. The plaintiffs originally lodged that as one of their cross points on their initial appeal, but abandoned it when it came to the Fifth Circuit. Primarily, the time was spent here in two phases. The first phase was from January 2010, when the third amended complaint was filed, raising the issue of the credit card offset fee, and the fall of 2010, when Judge Hughes issued an interlocutory order indicating which elements of cost he was going to recognize and which not. The plaintiffs overtly indicated that after that point, they felt that the case was solely about willfulness and bad faith, and they put their energies into undertaking proof of those factors, which failed. At the trial, of course, as Judge Jones knows, Judge Hughes announced at the beginning, I'm taking a fresh look at this case. I'm going to start from scratch to see if I made mistakes. And as hopefully Judge Jones recalls, during the first appeal, the cross appellant stood up and started talking about the interlocutory order being violated and that by itself demonstrating willfulness, which prompted the Fifth Circuit in the initial case to say that an interlocutory order has no effect whatsoever on willfulness or anything else. The findings that are mentioned are listed by us on pages 24 and 25 of our brief. These are pronouncements that Judge Hughes made during the hearing on attorney's fees last November, and he was very clear about what he viewed to be a complete waste of time on many insubstantial filings. And I'm saying this somewhat ambivalently because I'm not trying to cast stones at a member of the bar, but we are in a position here where we have to challenge findings that don't measure up to the standards set by this court. The court, as you have noted, had intimate knowledge of this case between 2009 and 2015 when the judgment was entered. And this court has recognized in the Gagnon case from 2010, which is 606 Federal 3rd at 1044, that it is possible to look at the record and determine that the court considers the lodestar even if he does not wrotely articulate, I find this number of hours to be reasonable at this hourly rate. It is undisputed in this case that the court discussed the Johnson factors in detail. In fact, it's a little amusing to hear the concern that the plaintiffs have now about Judge Hughes' ability to handle a case that, God forbid, it goes back on remand, because the Fifth Circuit told him off the bat, you made a mistake in predetermining attorney's fees at the end of the first case. He was going to award none. Right. He made it very clear he was unhappy with the performance of the plaintiffs and said zero. And I acknowledged during the oral argument in the first case the statute says the plaintiffs are entitled to recover reasonable attorney's fees. So that was the result in the first case, and he knew that, and the court knew that, and sent it back to him. Then he had about a two-hour hearing in November 2016 talking about the case, his concerns about the handling of the case, and the Johnson factors. The statute in question does not specifically talk about a prevailing party in 216, 29 U.S.C. Section 216, but this court in Cezanne, among other cases, has indicated that that's a convenient nomenclature to use to ascertain who prevails and how much they should get compensated for prevailing. That's in footnote 7 on page 799 of Cezanne. We have to part ways with the plaintiffs here talking about intertwined claims. Among other components, the FLSA has four unique components. Number one is a minimum wage component in Section 207. Number two is a retaliation component in Section 215. Number three is a willfulness component in Section 255. And number four is a good faith component in Section 260. The plaintiffs have acknowledged in this case that the retaliation claim is separable. Because they announced to Judge Hughes they were foregoing approximately $32,000 for prosecuting the retaliation claim unsuccessfully. That one, by the way, was resolved by summary judgment. And so we have to then focus a little bit more carefully than they would like you to on the result obtained in the case. It is correct that $1.5 million was awarded to the 230 claimants. What they didn't tell you is there were approximately 90 other claimants whose claims were disallowed. They made no effort at all to determine who had a meritorious claim and who did not. We had to do the heavy lifting on that and provided the court with an order that he entered with the acknowledgment and concession of plaintiffs that those other people never worked for Perrys as servers during the time period in question. They also have overlooked the fact that if they had succeeded on the willfulness claim and the bad faith claim. You said you had to do the heavy lifting on it. Was that part of the discovery is when that was revealed about who you were? There was no discovery conducted by the plaintiffs. We produced the documents to show who worked during the time period in question based on the judge's order. They did not interview any of their claimants to find out. Did you actually work there during the time period specified by the court? That's what I meant to say about the heavy lifting. And we did not serve any discovery on that other than to take the deposition of the plaintiff, Jillian Steele, on whether we retaliated against her for firing her for being caught stealing. The result obtained should be viewed in the light of all of the components in this case. The retaliation claim failed. If the willfulness and good faith claims had succeeded, then they would have had a judgment close to $4 million, which they did not achieve. They achieved the judgment that they did. And there should be no mistake here. If we were able to detect an understandable time entry that pertained to the actual merits of the minimum wage claim, we did not object to that. And by our calculation, according to Demonstrative B, that left about $200,000. We challenged about $575,000 of their attorney's fees. Demonstrative B also shows some of my favorite inclusions on their costs that they requested, including a loan to the plaintiff for $1,300, meals, the travel expenses incurred to argue the case in New Orleans in the first appeal, and so on. Did they try to include carrying costs from litigation finance firm? I'm not aware of that, Your Honor. Oh, I thought I saw some mention of that in the – There is one reference to a loan, but it's not clear what the basis for that was. So we also take the position that those costs were clearly not recoverable. And the hearing transcript of the November 2016 hearing indicates that I asked the court at the end, Judge, are you making a determination about costs? And his response was, you get the bill from the clerk and that's what you pay, meaning the taxable cost, which we have paid. Just touching briefly on removal of the judge for bias, I think I actually mentioned that earlier. Let me turn to the issue of the cross appeal, which has to do with the attorney's fees Judge Hughes awarded for the appellate work done in the first appeal. Again, making no comment on the caliber of the attorney, there is the distinct question of who was a prevailing party. The appellant here prevailed on the issue of the judgment for the minimum wage violation. The appellant specifically filed a cross appeal to challenge Judge Hughes' rulings on willfulness and bad faith. That appeal failed. As a matter of fact, this court went to the trouble of saying you didn't present any evidence to substantiate either position at all. And we calculated that there was approximately $45,000 of the attorney's time on appeal spent in regard to the issues that were part of the cross appeal that failed. So we take the position with regard to those fees that they are not compensable. Now, the Supreme Court recently has clarified the boundaries of abusive discretion. This was in the McLean v. EEOC case from April of this year. And the Supreme Court said a district judge cannot camouflage an error of law under the notion that he does or does not abuse his discretion. The error of law has to be identified separately from an abusive discretion standard. And although Judge Hughes took a significant step in conducting the hearing, in our view, the error of law has to do with the fact that the plaintiffs as cross appellants in the first appeal did not prevail on two major issues that certainly were not intertwined. And I should also indicate, as this court has made clear in Cox v. Brookshire Grocery from 1990, the burden of proof and the type of proof is different in willfulness and bad faith when compared to did you pay a proper minimum wage. The inquiry does not turn to the motive or the intent or the thinking of the employer. Rather, the determination is made, did you determine the minimum wage? It's a mathematical calculation. And Judge Higginson said in the first appeal, the cost that you assessed to the plaintiffs for giving them cash every night on the credit card fees was greater than what they received in their tip. So they suffered a loss in their tip. That constitutes a violation of the minimum wage. That's a completely different element of proof than what was in the mind of the employer at the time the policy was put into effect and what did the employer do to determine whether the statute was being complied with. And as Judge Jones pointed out in the earlier discussion, this was a novel area of the law that had never been addressed before by the Fifth Circuit. So it seems to me that they had to comply with the obligation to show that they were entitled to willfulness or bad faith and they did not do so. And that's why we are challenging solely the $45,000 extra that the attorney was awarded. Unless anybody has any questions, that's all I know for Thursday. I don't think we do. Thank you. Thank you, Your Honor. Mr. Patel. Thank you, Your Honor. May it please the Court. I want to just briefly touch on the, I guess, addendum that Appellee's Counsel has provided with the Court and myself. Counsel discusses these question marks on the billing entries and has a quote here from an affidavit prepared by one of our paraprofessionals. The problem with the quote is that it's taken out of context. These question marks aren't an indicator of whether a billing entry is a legitimate billing entry or not. Is it going to go into motions? Is it going to go into pleadings? Is it going to go into legal research? Does it go into hearings, et cetera? And so at record site 2418 or, sorry, record site 2481, there are additional paragraphs and additional content to this quote.  Going back to appellee's argument that we somehow as appellants shouldn't get fees for losing the good faith belief argument. Now, the good faith belief argument is actually a defense that paries would have to lodge in order to combat liquidated damages. It's not something that we have to go out of our way to investigate. It's something we get liquidated damages automatically under the FLSA. It's up to the defendants to lodge a good faith defense. And so it's a little perplexing for appellee's counsel to sit there and say, well, they didn't need to know what the state of mind was. They didn't need to get any fees for that because they're the ones who brought up the defense. They're the ones who are trying to get rid of the liquidated damages, something that we're automatically entitled to under the FLSA. Back to the appellate fees. Again, we disagree with appellee's contention that the fees are somewhat separable when you're drafting an appellate brief. I'm sure you are all aware when you're drafting an appellate brief, time just sort of gets clumped together as you're preparing for oral argument and you're preparing your briefs. You argued the first appeal, did you not? No, Judge Jones, I did not. It was actually Mr. Stern. I've seen you before. Yes, Judge Jones. I also live in Houston, so it might be. Well, I don't know about that. So, yeah, we agree that the appellate fees are also problematic from our perspective as well. The district court awarded the entirety of the appellate fees, but through some transcription error or otherwise reduced them inadvertently by around 6.7 percent. So we are also challenging the appellate fees as well. But back to the trial court briefs. I think that the opposing counsel's use of the case Cizan is illustrative not only for appellees but probably more so for appellants. In Cizan, the court panel was clear that there is a two-step process in determining an attorney's fee amount. The first step is always to calculate the load star. The district court didn't do that here. Instead, the district court relied on its knowledge, went directly into the Johnson factors, misapplied those Johnson factors and came up with erroneous findings of fact upon which he rested those factors. If we look at the factors in total, there was one factor that the court outright came out and said was negative, and that was the spending more time than should have. There's a second factor that in our briefing we attributed a negative. Let me go back to that. Sure. Their view on the load star is, I think they, and I may be overstating what they said, but I think they didn't argue that he actually made a specific finding on the load star. I think the argument was there's sufficient evidence in the record that we can conclude that he made some determination about the load star. I think that was the argument. What's your response to that? My response to that, Your Honor, is that we also have evidence to support the reasonableness of our attorney's fee request. We have submitted detailed billing records. We've submitted detailed summaries. There are affidavits from attorneys dictating the reasonableness of the fee. There's evidence in the record of an exercise of billing judgment, which is at record site 2233 for the trial court and for the appellate court at 2431 and 2233. So there is sufficient evidence from our position as well to support a larger fee amount. The problem is that because of the way that the district court approached the fee calculation, there is no way to know. There is no way to know whether my time preparing for oral argument with Mr. Sturm was excessive or not. And there was no time, but if there were, there's no way to know whether the court thought that that was okay or reasonable, as is the standard, versus not. And so appellants respectfully request this Court to vacate the attorney's fee award on both the trial court and the appellate fees and either render a reasonable attorney's fee amount on both or remand or alternatively remand or reassign the case to an objective judge who might not have inherent biases with dealing with the case for seven years. Thank you.